**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADA ELLEN CLARK,              ) | |
|       Plaintiff,       ) | |
|                ) | |
|    v.                  ) | Civil Action No. 09-933 |
|                ) | Electronically Filed |
| MICHAEL J. ASTRUE,    ) | |
| COMMISSIONER OF SOCIAL  ) | |
| SECURITY,            ) | |
|       Defendant.    ) | |

**MEMORANDUM OPINION**

**I.      Introduction**

Plaintiff Ada Ellen Clark ("Clark") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433].  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed during the administrative proceedings.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire evidentiary record, the Court finds that the decision of the Commissioner is "supported by substantial evidence" within the meaning of § 405(g).  Therefore, the Court will deny Clark's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's administrative decision.

**II.     Procedural History**

Clark protectively applied for DIB on July 30, 2007, alleging disability as of July 11,

1

2007.  R. 111, 134.  The application was denied by the state agency on October 11, 2007.  R. 74.

Clark responded on November 23, 2007, by filing a timely request for an administrative hearing.

R. 81-82.  On December 3, 2008, a hearing was held in Morgantown, West Virginia, before

Administrative Law Judge J.E. Sullivan (the "ALJ").  R. 18.  Clark, who was represented by

counsel, appeared and testified at the hearing.  R. 24-58.  Testimony was also taken from Dr.

Lawrence Ostrowski ("Dr. Ostrowski"), an impartial vocational expert.  R. 59-66.

In a decision dated February 26, 2009, the ALJ determined that Clark was not "disabled"

within the meaning of the Act.  R. 4-17.  The Appeals Council denied Clark's request for review

on May 29, 2009, thereby making the ALJ's decision the final decision of the Commissioner in

this case.  R. 1.  Clark commenced this action on July 16, 2009, seeking judicial review of the

Commissioner's decision.  Doc. No. 1.  Clark and the Commissioner filed motions for summary

judgment on December 16, 2009, and December 17, 2009, respectively.  Doc. Nos. 7 & 9.  These

motions are the subject of this memorandum opinion.

## III.   Statement of the Case

In her decision, the ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act
     through December 31, 2011.

2.   The claimant has not engaged in substantial gainful activity since July 11, 2007,
     the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease in
     the neck, back and right hip and bilateral knees (Exhibit 15F) and nonsevere
     gastroesophageal reflux disease (GERD), depression, high blood pressure,
     arthritis, hypertension, hypothyroidism and endolymphatic hydrops by history or
     benign positional vertigo or anxiety related and/or migraine/cervicogenic
     dizziness, probable fibromyalgia and osteoporosis (20 CFR 404.1521 *et seq.*).

2

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing of ladders, ropes, scaffolds, and occasional balancing, stooping, kneeling, crouching and/or crawling; with sit-stand option throughout the day or without breaking task.  (SSR 96-5p).

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on March 16, 1955 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferable job skills are not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2007 through the date of this decision (20 CFR 404.1520(g)).

R. 9-17.  Clark's arguments all relate, in one form or another, to the ALJ's alleged failure to fully account for her vertigo and resulting "dizziness" in determining her residual functional capacity. Doc. No. 8, p. 2.

**IV.     Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is provided by

statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding e standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing*

---

[1]  Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails

to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20

C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed

Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59;

*Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be

deemed disabled where he or she is nevertheless unable to engage in "any other kind of

substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461

(*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the

plaintiff must first demonstrate the existence of a medically determinable disability that

precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at

59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her

previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the

plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v.*

*Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

*Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a

publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d

Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative

notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant

DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

_____

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect
all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record
"medically undisputed evidence of specific impairments not included in a hypothetical question
to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*,
745 F.2d at 218.

the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

### Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R.

§ 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

11

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical

evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

(3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the

evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

18

V.      **Discussion**

      The inquiry in this case is quite narrow, since Clark makes clear that the only issue that she wishes to pursue in this proceeding concerns the ALJ's finding that her vertigo was a "non-severe" impairment.  Doc. No. 11, p. 2.  She argues that the ALJ erred in determining that her vertigo was not "severe," thereby tainting the ultimate conclusion that her impairments did not render her "disabled."  *Id.*, pp. 2-4.  According to Clark, the ALJ's error impugned the ultimate residual functional capacity assessment and corresponding hypothetical question to Dr. Ostrowski.  Doc. No. 8, pp. 7-17.

      Under the Commissioner's regulations, an impairment is not "severe" if it does not "significantly limit" the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Activities such as sitting, standing and walking are considered to be "basic work activities."  20 C.F.R. § 404.1521(b)(1).  Clark contends that her vertigo significantly impacted her ability to stand or walk for extended periods of time.  Doc. No. 8, p. 7.  This issue is of critical importance in this case, since the ALJ determined that Clark could engage in a limited range of light work.  R. 13.  The regulation defining the term "light work" provides:

      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  If Clark had been capable of performing the full range of light work, a

finding of "not disabled" would have been directed by Medical-Vocational Rule 202.10.  20

C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.  Because Clark had additional limitations

which eroded the light unskilled occupational base, Rule 202.10 was not directly applicable.  R.

16.  Nevertheless, Dr. Ostrowski was able to identify jobs consistent with Clark's vocational and

residual functional capacities, thereby providing for a determination that Clark was not disabled.

R. 16, 64.

Given Clark's age and limited education, Medical-Vocational Rule 201.09 would direct a

finding of "disabled" if Clark were deemed to be capable of only sedentary work.  20 C.F.R. Part

404, Subpart P, Appendix 2, Table No. 1.  The regulation defining the term "sedentary work"

provides:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves sitting, a certain
> amount of walking and standing is often necessary in carrying out job duties.  Jobs
> are sedentary if walking and standing are required occasionally and other
> sedentary criteria are met.

20 C.F.R. § 404.1567(a).  The crux of Clark's argument is that her vertigo precluded her from

engaging in light work (which would require "a good deal of walking or standing"), thereby

rendering her incapable of performing work categorized above the sedentary level of exertion.

Doc. No. 8, pp. 7-13.  Such a difference in exertional levels, of course, would be dispositive in

this case, since Clark would be "disabled" under Rule 201.09 if she were limited to sedentary

work.

Clark's history of vertigo is recorded in the documentary record of this case.  On August

14, 2006, Clark telephoned the office of Dr. Carey McMonagle, her primary care physician,

claiming that she would get "dizzy" and almost "blacks out" while turning to the right.  R. 194.

Shortly thereafter, she was diagnosed as having vertigo.  R. 196.  On October 31, 2006, Clark

reported to Dr. Alan J. Cappellini that she had experienced "neck pain and dizziness" for a period

of two days.  R. 244.  Clark also experienced dizziness while Dr. Cappellini was examining her.

*Id.*  As of January 5, 2007, Clark continued to experience episodes of "mild dizziness."  R. 241.

She again reported "pain in the neck with dizziness" on May 24, 2007.  R. 237.

On July 26, 2007, Clark visited Dr. Owen A. Nelson to be evaluated and treated for

osteoporosis.  R. 252.  She reported to Dr. Nelson that she had repeatedly fallen both because of

problems with her left knee and because she had been experiencing a "spinning sensation."  R.

252.  She was referred to Dr. Ravi Nadarajah for an evaluation of her vertigo.  R. 253.  On

August 14, 2007, a computed tomography ("CT") scan of Clark's head yielded normal results.

R. 277-278.  In a letter to Dr. Nadarajah dated September 21, 2007, Dr. Joseph M. Furman

opined that Clark was suffering from "migraine-related dizziness."  R. 296.  Dr. Furman found

no evidence of a "peripheral vestibular ailment."  *Id.*  According to Dr. Furman, Clark could

experience dizziness while "lying down, sitting up, moving from a sitting to a standing position,

rolling over in bed, or tipping her head forward or backward."  R. 295.

At the hearing, Clark testified that she could sometimes sit in the same position for fifteen

minutes (or longer) without having to change positions, depending on the degree of pain that she

felt in her hips and legs.  R. 36.  She stated that she could continuously walk for one half-hour

without the need to rest, but that she would sometimes have difficultly maintaining her balance

because of her vertigo.  *Id.*  She also explained that a pill prescribed to help her sleep sometimes

made her feel dizzy.  R. 38-39.  When asked by the ALJ whether she could perform the duties of

a simple job involving only one- or two-step functions, Clark declared that she would be too dizzy to work.  R. 39.

Despite the "dizziness" reported both by Clark and by her treating physicians, the ALJ determined that Clerk's vertigo was not "severe."  R. 9-10.  The United States Court of Appeals for the Third Circuit has referred to the second step of the sequential evaluation process as "a *de minimis* screening device" designed to quickly dispose of patently "groundless claims."  *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003).  Because this step of the process is to be rarely utilized as a "basis for the denial of benefits," "its invocation is certain to raise a judicial eyebrow" when it is employed for *that* purpose.  *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 361 (3d Cir. 2004).  In this case, however, the ALJ did not invoke the second step as a "basis for the denial of benefits," since Clark's degenerative disc disease was deemed to be "severe."  R. 9.  Since the ALJ found Clark to be suffering from a "severe" impairment, the analysis proceeded through steps three, four and five of the sequential evaluation process.  The ALJ determined that Clark was not suffering from a Listed Impairment, and that she could not return to her past relevant work as a store stock person, cashier or cleaner.  R. 11-13, 15.  Moving on to the fifth step of the process, the ALJ concluded that Clark could work as an office helper or mail clerk.  R. 16-17.

Clark's case was not disposed of at the second step of the process.  The second and third steps of the process are designed to expedite the adjudication of claims that can be easily honored or denied on the basis of medical considerations alone, without the need to consider claimants' vocational backgrounds.  In *Bowen v. Yuckert*, 482 U.S. 137 (1987), the Supreme Court explained:

> The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account.  Similarly, step three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.

*Bowen*, 482 U.S. at 153.  The primary reason for treating the second step of the process as "a *de minimis* screening device" is to ensure that potentially meritorious claims are not dismissed prematurely, without proper consideration of the relevant vocational factors.  *Newell*, 347 F.3d at 546 ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and *the sequential evaluation process should continue.*")(emphasis added).  Where one or more of a claimant's impairments are found to be severe, thereby permitting the continuation of the process and the consideration of vocational factors, an error made by an administrative law judge at the second step involving a separate impairment constitutes reversible error *only* if the limitations resulting from that impairment are not incorporated within the ultimate residual functional capacity finding.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

A finding of non-severity, like any other factual finding, must be accorded the deference inherent in the Act's "substantial evidence" standard of review.  *McCrea*, 370 F.3d at 360-361.  In this case, the Court need not determine whether "substantial evidence" supports the ALJ's finding that Clark's vertigo was not severe, since the record conclusively establishes that the ALJ accounted for Clark's dizziness in assessing her residual functional capacity.  At the hearing, the

23

ALJ carefully questioned Clark about her dizziness, referencing specific treatment notes during the course of the colloquy.  R. 49-51, 53.  The ALJ also asked Dr. Ostrowski three hypothetical questions, the second of which was ultimately adopted as being reflective of Clark's residual functional capacity.  R. 13, 60-66.  The first hypothetical question did not include a sit/stand option, but the second one did.  R. 61-63.  Dr. Ostrowski testified that under the first assessment, Clark would have been able to return to her past relevant work as a cashier.  R. 61.  He further testified that if Clark needed a sit/stand option, she would be precluded from working as a cashier.  R. 63.  The ALJ relied on this testimony to find that Clark could not return to her past relevant work.  R. 15.  Dr. Ostrowski identified the jobs of office helper and mail clerk as being consistent with the ALJ's second hypothetical question, which described an individual who needed a sit/stand option.  R. 63-64.  That is why Clark's case was decided at the *fifth* (rather than at the *fourth*) step of the sequential evaluation process.  R. 15-17.

The crux of Clark's argument is that her vertigo rendered her incapable of standing or walking for six hours during the course of an eight-hour workday, which would be required of an individual expected to perform light work.  Doc. No. 8, p. 7.  This argument, however, overlooks the fact that the ALJ incorporated a sit/stand option into Clark's residual functional capacity, thereby accommodating her alleged inability to stand or walk as much as an individual capable of performing the full range of light work.  R. 13.  Holly Benton ("Benton"), a nonexamining medical consultant, opined on October 10, 2007, that Clark was capable of performing a range of light work that involved only occasional climbing, balancing, stooping, kneeling, crouching and crawling.  R. 158-161.  The ALJ generally adopted Benton's findings, but she added a sit/stand option to accommodate Clark's sitting, standing and walking limitations.  R. 13-15, 63.  Since

24

the ALJ accounted for Clark's dizziness in determining her residual functional capacity, any error committed at the second step of the process concerning Clark's vertigo was harmless. *Lewis*, 498 F.3d at 911; *Maziarz*, 837 F.2d at 244.  Under the Commissioner's regulations, an administrative law judge's residual functional capacity assessment must account for *all* of the claimant's limitations, including those resulting from "non-severe" impairments.  20 C.F.R. § 404.1545(a)(2).  Where, as here, limitations resulting from a "non-severe" impairment are reflected in the residual functional capacity determination, the non-severity finding *itself* is inconsequential.

The Court acknowledges that the ALJ's third hypothetical question, which included additional limitations described by Clark in her testimony, was reflective of an individual who could not engage in substantial gainful activity, and who would meet the Act's stringent standard of disability.  R. 65.  Nonetheless, the ALJ was not required to incorporate every limitation *alleged* by Clark into her residual functional capacity assessment.  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  She was only required to account for all of Clark's *credibly established* limitations.  *Id.*  As the ALJ observed in her opinion, none of Clark's treating physicians submitted evidence indicating that her impairments were causing limitations beyond those included within the residual functional capacity finding.  R. 14.  Since Benton had opined that Clark was capable of performing a limited range of light work, the ALJ certainly had a sufficient evidentiary basis for so finding.  *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). If Clark believed herself to have limitations in excess of those identified by Benton, the onus was on her to present evidence from her treating physicians establishing the existence of those limitations.  *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999).  The

*only* residual functional capacity assessment contained in the record is the one supplied by Benton.  The ALJ's residual functional capacity determination included a limitation (i.e., the sit/stand option) that was not identified by a single medical source.  R. 13, 158-161.  Under these circumstances, the Court has no basis whatsoever for setting aside the ALJ's findings.

## VI.  Conclusion

In determining whether the Commissioner's decision is "supported by substantial evidence" within the meaning of § 405(g), the Court must accord deference to the ALJ's evaluation of the evidence.  *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 506 (3d Cir. 2009).  In this case, the ALJ's assessment of Clark's residual functional capacity was more limiting than the *only* assessment supplied by a medical source.  Even if the ALJ erred in finding Clark's vertigo to be "non-severe" (a question as to which the Court expresses no opinion), the record establishes that this impairment was fully considered and accounted for at the fourth and fifth steps of the sequential evaluation process.  Accordingly, the Court will deny Clark's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the administrative decision of the Commissioner.

An appropriate order will follow.

 

 

_____
Arthur J. Schwab
United States District Judge

cc: All counsel of record